Lee Stein (#12368)
lee@mscclaw.com
Michael Morrissey (#012531)
michael@mscclaw.com
MITCHELL | STEIN | CAREY | CHAPMAN, PC
One Renaissance Square
2 North Central Avenue, Suite 1450
Phoenix, AZ 85004
Telephone:  (602) 358-0292
Facsimile:   (602) 358-0291
Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-17-0585-02-PHX-JJT |
| Plaintiff, | **MOTION TO DISMISS COUNTS 1 AND 2 PURSUANT TO FED. R. CRIM. P. 12(b)(3)(B)(v)** |
| v. | |
| Peter Nathan Steinmetz, et al., | (Fed. R. Crim. P. 7(c)(1)) |
| Defendant. | |

Defendant Peter Nathan Steinmetz (hereafter "Dr. Steinmetz") hereby moves to dismiss counts 1 and 2 of the superseding indictment because the indictment fails to provide the notice required by the U.S. Constitution and by Rule 7(c)(1) of the Federal Rules of Criminal Procedure.

**Background**

*1.  The Charges Against Dr. Steinmetz*

Dr. Steinmetz is charged in two of the eight counts of the superseding indictment. He is charged with operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960 and conspiring to do so in violation of 18 U.S.C. § 371.  The indictment provides virtually no information with respect to the "business" that he and his co-

defendant Costanzo are alleged to have engaged in, the dates on which they supposedly engaged in unlicensed money transmitting, and with respect to the conspiracy, the object of the conspiracy is not described and no overt act taken in furtherance of the indictment is alleged.[1]  The indictment merely parrots the words of the statutes.  The only statements in the indictment that even approach being factual in nature precede the charged counts and state conclusions as follows:

1. Defendants THOMAS MARIO COSTANZO and PETER NATHAN STEINMETZ operated a money transmitting business.

2. Defendants THOMAS MARIO COSTANZO and PETER NATHAN STEINMETZ neither registered this money transmitting business with the United States government, nor obtained a license from the State of Arizona to operate this money transmitting business, as required by law.

3. Defendants THOMAS MARIO COSTANZO and PETER NATHAN STEINMETZ enabled their customers to exchange cash for "virtual currencies" charging a fee for their services.

(Doc 18, Indictment, ¶¶ 1-3.)

Both count one and count two simply say that the conduct occurred in Arizona over at least a four-year period: "From at least in or about April 2013 to at least in or about April 2017."  (*Id.* ¶¶ 4-5.)  That is the entirety of the information provided by the indictment.

2. *Factual Context*

Dr. Steinmetz is a distinguished brain researcher, having earned both his Ph.D. and M.D. from Johns Hopkins University School of Medicine.[2]  He has dedicated his career to conducting brain research at Barrow Neurological Institute in Phoenix, and most recently, as Senior Scientist of the Nakamoto Brain Research Institute in Tempe,

---

[1] The failure to allege any overt acts is the subject of a separate motion to dismiss count one of the superseding indictment.
[2] Dr. Steinmetz's curriculum vitae is attached as Exh. 1.

Arizona.[3] In addition to research, Dr. Steinmetz has also taught at the university level for seven years at the University of Minnesota and Arizona State University.[4]

Dr. Steinmetz has published extensively in respected medical journals, including the journal *Nature*, and *Journal of Neural Engineering*, and has authored book chapters in his field.[5]  His current research for the Nakamoto Brain Research Institute, "Single Neuron Recordings of Bilinguals Performing in a Continuous Recognition Memory Task," was recently published in the journal PlosONE.[6]

In addition to being a noted scientist, Dr. Steinmetz is a Libertarian and believes deeply in the principles of liberty and small government. Indeed, his business card states that he is a "Freedom Activist" and "Bitcoin Enthusiast."[7]  This view of limited government sparked his interest in Bitcoin.[8]  As a Libertarian, he found the notion of a worldwide digital currency not controlled by government to be appealing and, as such, was an early adopter.  He invested in bitcoin early and those investments have allowed him to provide for his family.  Indeed, one of the accounts seized by the government for forfeiture represents bitcoin used by Dr. Steinmetz to establish the "Eloise Steinmetz Trust," which provides for the education of his niece.[9]

Dr. Steinmetz avidly and publicly pursued his interest in liberty and in investing in bitcoin.  Those interests brought him into contact with his now co-defendant Thomas Costanzo, with whom Dr. Steinmetz shared an interest in Bitcoin.  Indeed, both Dr. Steinmetz and Costanzo, along with many others, participated in Bitcoin "meet ups,"

---

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] A copy of Dr. Steinmetz's business card is attached as Exh. 2.
[8] The proper capitalization of the terms "Bitcoin" and "bitcoin" remains the subject of some debate.  As used here, "bitcoin" refers to the digital currency, while "Bitcoin" refers to "the concept of Bitcoin, or the entire network itself."  https://bitcoin.org/en/vocabulary.
[9] *See* October 6, 2017 letter from DEA forfeiture counsel, accepting claim of Jonathan Steinmetz as trustee of the Eloise Steinmetz Education Trust, attached as Exh. 3.

-3-

which are in person gatherings where enthusiasts come together to share information, conversation, and at times, trade with each other in bitcoin.[10]

Dr. Steinmetz's interest in Bitcoin and his willingness to engage in the one-to-one trades of bitcoin caused him to become a target of the undercover investigation that resulted in the indictment in this case. Dr. Steinmetz met the undercover agent, known to him as "Sergei," for the first time on March 21, 2015. Dr. Steinmetz told Sergei he was a research neurologist, studying "how single neurons fire in the brainstem," and that "with [b]itcoin I do a lot of sort of international arbitrage" buying and selling in different markets.[11] Dr. Steinmetz was clear about the libertarian philosophy underpinning his interest in Bitcoin: "I've always kind of been in this for political reasons essentially, sort of long haul, but I thought it was a good idea to have a currency that's direct person to person outside the control of government."[12] After the undercover acknowledged, "you said you're interested politically mostly in this thing?," Dr. Steinmetz reiterated his political purpose to the undercover: "I got involved for political reasons, essentially. Initially yeah, I thought, I think it's a very good idea to have a currency that the government can't manipulate."[13]

From this first meeting on, and over the course of the next two years, Dr. Steinmetz stressed that he would always seek to comply with the law, and deal only with others who followed the law. In that very first meeting, when the undercover feigned ignorance about suspicious activity reports (SARS), Dr. Steinmetz explained that banks used SARS to document potentially illegal activity, and told him "if you deliberately break up your deposits into less than $10,000, you are guilty of the federal crime of structuring your deposits."[14] Dr. Steinmetz informed the undercover that Dr. Steinmetz kept his trading of bitcoin legal, that he would not deal with someone whom he knew was

---

[10] Discovery at 1132, showing Arizona Bitcoin Meetup profile for Dr. Steinmetz, and his title as "Assistant Organizer," attached as Exh. 4.

[11] Transcript of March 21, 2015 meeting at 6, attached as Exhibit 5.

[12] *Id*. at 7.

[13] *Id*.

[14] *Id*. at 11.

doing something illegal, and that his trading activity was for his own investment purposes.[15]

Over the course of the next two years, from March 2015 to April of 2017, Dr. Steinmetz never swayed from his commitment to follow the law as he understood it.  His commitment to complying with the law was put to the test on March 8, 2016, when the undercover came to Dr. Steinmetz's house to buy bitcoin.  The undercover told Dr. Steinmetz that the money for the purchase came from the sale of "heroin."[16]  Dr. Steinmetz immediately ended his relationship with the undercover, telling him he "absolutely" would not do this, or any more sales in the future, "we're done."[17]   Dr. Steinmetz told the undercover "I cannot do any deals which involve an illegal activity" and noted he would not violate "federal money laundering laws."[18]  After repeated enticements from the undercover, who referred to his illegal activity multiple times as a "gray" area, and offered to pay a higher price, Dr. Steinmetz's maintained his refusal to engage in illegal activity and finally succeeded in getting the undercover out of his house.[19]

Throughout the government's repeated targeting of Dr. Steinmetz, his actions in refusing to deal with money from an illegal source were consistent with his explanations to undercover agents that he kept meticulous records of all bitcoin trades, and that if provided with a Court order, he would disclose all his transactions.[20]

 Knowing that Dr. Steinmetz would not knowingly participate in a transaction involving illegal drug money, co-defendant Costanzo explained to a different undercover agent on April 20, 2017, outside of the presence of Dr. Steinmetz, after the undercover told Costanzo that the source of his funds was illegal drug money, that if Dr. Steinmetz

---

[15] *Id*. at 11 -12, 14.
[16] Transcript of March 8, 2016 at 2, attached as Exhibit 6.
[17] *Id*.
[18] *Id*. at 3.
[19] *Id*. at 3-4, 10.
[20] Transcript of April 10, 2017 meeting, Exh. 7 at 911-914

had been present to hear that, that would be the "end of the meeting" for Dr. Steinmetz.[21] Costanzo and the undercover then discussed that they could not tell Dr. Steinmetz that the undercover's funds were illegal drug proceeds, with the undercover saying "I thought I did pretty good in the last one."[22]

Through two years of aggressive, undercover investigation, Dr. Steinmetz confirmed through his documented words and actions that he would not knowingly participate in illegal activity.  Even when Dr. Steinmetz directly rebuffed an undercover who sought to involve him in a transaction involving money purportedly from the sale of heroin, the government did not respond by ending its investigation of him.  Rather, the government adopted, as a tactic of its investigation, a practice of agreeing with Costanzo to lie to Dr. Steinmetz and keeping from him any suggestion that the money provided to Costanzo was from an illegal source.   After then conspiring with Costanzo and indicting Dr. Steinmetz, the Government, in a bare bones indictment, now seeks to convict him of felonies and forfeit his home – the location from which Dr. Steinmetz explicitly refused to engage in any illegal act.

While it is true that Dr. Steinmetz participated in one-to-one sales of bitcoin, believing that the funds being used were from a legal source, he did so with the understanding that when he was selling his own bitcoin for his personal investment purposes, he did not need a license.  Whether he was correct in his understanding is at the core of this case.  In evaluating the assertion in the superseding indictment that Dr. Steinmetz did need a license, not a single transaction or other fact is identified, making it impossible for Dr. Steinmetz to marshal the facts and defend himself.  The failure to allege specific facts establishing that he committed a crime denies him of the rights guaranteed to him under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure and accordingly, counts one and two – the two counts in which he is named – should be dismissed.

---

[21] Transcript of April 20, 2017 meeting, Exh. 8 at 1047-8.
[22] *Id*. at 1048.

**Argument**

An indictment must "provide the substantial safeguards to criminal defendants that indictments are designed to guarantee." *United States v. Cecil,* 608 F.2d 1294, 1296 (9th Cir. 1979). Specifically, "[a]n indictment must furnish the defendant with a sufficient description of the charges against him to enable him to prepare his defense, to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury, to enable him to plead jeopardy against a later prosecution, and to inform the court of the facts alleged so that it can determine the sufficiency of the charge." *Id.*  An "indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  *See, e.g. United States v. Shaffer,* 383 F. Supp. 339, 341 (D. Del. 1974) (discussing constitutional purposes of rule and stating "Rule 7(c) is intended to implement these constitutional standards"); *accord United States v. Curtis*, 506 F. 2d 985 (10th Cir. 2009) (reversing conviction and directing dismissal because indictment failed to describe the scheme and artifice to defraud alleged in 4 counts of wire fraud); *United States v. Keuylian,* 23 F. Supp. 3d 1126, 1128-29 (C.D. Cal. 2014) (granting motion to dismiss single count of wire fraud because indictment failed to allege essential facts); *United States v. Cooper*, No. 13-cr-00693-SI-1, 2014 WL 6065497, at *3 (N.D. Cal. Nov. 12, 2014) (dismissing count because the indictment lacked sufficient detail); *United States v. Clarine*, 138 F. App'x 940 (9th Cir. 2005) (unpublished).

Should the Government contend that its pleading failures can be cured by a bill of particulars or by open file discovery, the Ninth Circuit and other courts have explicitly rejected that idea.  "[A] bill of particulars cannot save an invalid indictment."  *Cecil*, 608 F.2d at 1296; *see also United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979) ("The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge."); *Keuylian,* 23 F. Supp. 3d at 1128 (quoting *Cecil*

1    and noting that "[i]f a bill of particulars were allowed to save an insufficient indictment,

2    the role of the grand jury as intervenor would be circumvented.").

3            Here, the allegations are every bit as devoid of necessary detail as the cases cited

4    above.  The conspiracy count merely tracks the statutory language and says the

5    conspiracy occurred in Arizona sometime over "at least" a four-year period.[23]  Similarly,

6    count two—charging a violation of 18 U.S.C. § 1960—repeats the statutory language

7    (though not exactly) and indicates the conduct occurred in Arizona over the same four-

8    year period.  (Doc. 18, Indictment, ¶¶ 4-5.)  Nowhere does the Indictment "allege

9    sufficient facts [to fulfill the constitutional purposes discussed above]."  *See Keuylian*, 23

10   F. Supp. 3d at 1128 (enumerating same constitutional purposes discussed in *Cecil* and

11   other cases).

12           This skeletal pleading has "deprive[d] the defendant of a basic protection that the

13   grand jury was designed to secure, because [it could allow Dr. Steinmetz to be] convicted

14   on the basis of facts not found by, and perhaps not even presented to, the grand jury that

15   indicted him."  *See Keith,* 605 F.2d at 464.  The Government's pleading also prevents Dr.

16   Steinmetz from "prepar[ing] his defense," as he has no idea what specific acts the

17   Government claims to be unlawful.  *See Cecil*, 608 F.2d at 1296.  And finally, by reciting

18   no facts supporting its charges, the Government has failed "to inform the court of the

19   facts alleged so that it can determine the sufficiency of the charge."  *See id.*[24]

20           Similar to the indictment that was found defective in *Cecil,* "[t]he present

21   indictment is a rather barren document."  *See id.*  Aside from tracking the language of the

22   pertinent statutes in setting out the elements of the offenses with which defendants were

23   charged . . . [t]he indictment fails to state any other facts or circumstances pertaining to

24   _____

25   [23] The inadequate level of detail regarding the timing of the alleged conspiracy is
     compounded by the lack of specific allegations regarding overt acts of the conspiracy and
26   detail in the substantive count related to the unlicensed business.

27   [24] Notably, counsel for Dr. Steinmetz wrote to the Government asking that it provide the
     basic information the indictment lacks.  The Government never responded.  *See* Exh. 9,
28   Letter from Michael Morrissey to AUSAs Matthew Binford and Carolina Fernanda
     Escalante Konti, dated September 28, 2017.

the conspiracy or any overt acts done in furtherance thereof.  More importantly, the indictment fails to place the conspiracies within any time frame." *See id.* at 1296-97.  In *Cecil,* as here, the date references in the indictment are "open-ended in both directions" and thus "fail to place the conspirac[y] within any time frame." *Id*.  This indictment is as defective as the one dismissed by the *Cecil* court.

## Conclusion

Because the indictment does not provide the "essential facts constituting the offense[s] charged," it is defective in that it does not state an offense.  Accordingly, the Court should dismiss counts one and two.

RESPECTFULLY SUBMITTED on October 27, 2017.

MITCHELL | STEIN | CAREY | CHAPMAN, PC

By:   */s/ Lee Stein*
Lee Stein
Attorneys for Defendant

I certify that on October 27, 2017, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electrocnic Filing to the following CM/ECF registrants:

Clerk's Office
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington
Phoenix, Arizona 85003

Matthew Binford
Fernanda Carolina Escalante Konti
Assistant U.S. Attorneys
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, AZ 85004
Attorneys for Plaintiff

*/s/ Julie Greenwood*